IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BANK OF AMERICA, N.A.,

      Plaintiff,

vs.                                                        Civ. No. 03-00346 MV/WDS

SCOTT ESPARZA, SHARLA ESPARZA,
LOS ALAMOS NATIONAL BANK, N.A.,
AMWEST SURETY INSURANCE
COMPANY, and the DEPARTMENT OF
THE TREASURY, INTERNAL REVENUE
SERVICE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Amwest Surety Insurance Company's Motion for Partial Summary Judgment on its Counterclaim and Crossclaim, filed July 28, 2003, **[Doc. No. 54]**. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is not well-taken and will be **DENIED**.

## BACKGROUND

Defendant Scott Esparza was a bail bond licensee of Defendant Amwest Surety Insurance Company ("Amwest") pursuant to a Bail Bond Agreement dated March 14, 2000 (the "Bail License Agreement"). Defendant Sharla Esparza was an indemnitor of Scott Esparza's obligations under the Bail License Agreement pursuant to an individual indemnity agreement ("Indemnity Agreement"). On October 13, 2000, Scott and Sharla Esparza (the "Esparzas") executed and delivered a promissory note (the "Note") to Amwest in the amount of $1,000,000.00, plus interest at the rate of ten percent per year. The Note provides that it is

payable upon demand. Shortly after executing the Note, the Esparzas executed and delivered a mortgage (the "Mortgage") in favor of Amwest covering property located at 54 Honeysuckle Circle, Santa Fe, New Mexico ("the Property").[1] The Mortgage secured "payment and/or performance of Mortgagor's obligations under the terms of the Bail License Agreement" and "payment of the promissory note, dated October 13, 2000." The Mortgage further states that "[s]aid promissory note is payable upon demand, should Mortgagor default on any of the obligations set forth in the Bail License Agreement."

On June 7, 2001, Amwest was declared insolvent and an Order of Liquidation was filed by the Director of Insurance for the State of Nebraska. On December 6, 2002, L. Tim Wagner, as Liquidator of Amwest, filed a lawsuit against the Esparzas in the District Court of Lancaster County, Nebraska, captioned *State of Nebraska, ex rel., L. Tim Wagner, Director of Insurance of the State of Nebraska, as Liquidator for Amwest Insurance Company and as Liquidator of Far West Insurance Company v. Scott J. Esparza, et al.*, Case No. 02-4542, (the "Nebraska case"). The Nebraska case asserts, in part, that the Esparzas violated the Bail License Agreement.

On March 19, 2003, Plaintiff Bank of America, the first lienholder on the Property, filed this case seeking foreclosure of its mortgage and sale of the Property. Amwest filed an Answer, Counterclaim and Crossclaim on May 12, 2003. In its Crossclaim, Amwest asserts that Scott and Sharla Esparza breached the terms of the Bail License Agreement, the Note, the Mortgage, the Indemnity Agreement, and the Liquidation Order, and seeks a monetary judgment against the Esparzas, foreclosure of the Mortgage, and appointment of a receiver to manage the property.

---

[1] The Mortgage was signed by Sharla Esparza on December 12, 2000, and by Scott Esparza on September 26, 2001.

On October 28, 2003, the Court entered an Order finding that Bank of America had a valid first mortgage lien on the Property; foreclosing the mortgage held by Bank of America; granting Bank of America a judgment against the Property and against Scott Esparza and Sharla Esparza in the amount of $3,451,719.62; ordering the sale of the Property to satisfy the judgment granted to Bank of America (and, if there were any remaining proceeds, to satisfy the junior lienholders); and appointing a Special Master to oversee the sale of the Property. The Property was sold at public auction by the Special Master on December 19, 2003. Bank of America was the highest bidder at $2,723,000.00. On January 15, 2004, the Court entered an Order Approving Special Master's Report and Confirming the Foreclosure Sale.

Amwest now seeks partial summary judgment on its counterclaim and crossclaim. The Esparzas request that the Court deny Amwest's motion and stay the proceedings between the parties pending the outcome of the Nebraska case.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

The Esparzas' brief in this case is rife with inconsistent and contradictory statements. *Compare* Defendants' Response at p. 1 ("Scott and Sharla Esparza admit the Undisputed Facts set forth in the Motion for Summary Judgment.") *with* Defendants' Memorandum in Support of Their Opposition at p. 1-4 (contesting many of the undisputed facts);[2]  Defendants' Response at

---

[2] In opposition to Amwest's motion, the Esparzas inexplicably filed a response and memorandum in support thereof.

4

p. 2 ("Defendants admit that they are in default of their obligations under the terms of the Note as set forth.") *with* Defendants' Memorandum at p. 1-2 (denying that defendants are in default under the terms of the Note). As a result, it is nearly impossible for the Court to determine precisely what is at issue in this case, much less which facts are disputed and which facts are not. Despite these inconsistencies, however, it is apparent that summary judgment is improper.

Amwest is seeking, in part, foreclosure of the Mortgage and a deficiency judgment against the Esparzas for the amounts owed under the Bail License Agreement and the Note because the Mortgage secured these obligations. The Note itself states that it is payable "upon demand." Standing alone, it would appear that Amwest could, for any reason, demand payment under the Note and the failure to make such payment would constitute a default, entitling Amwest to foreclose on the Mortgage. The Mortgage securing the Note, however, states that the Note "is payable upon demand, should Mortgagor default on any of the obligations set forth in the Bail License Agreement." Construing this language in the light most favorable to the Esparzas, Amwest could only demand payment on the Note if the Esparzas defaulted on their obligations under the Bail License Agreement. Consequently, resolution of Amwest's motion for foreclosure of the Mortgage and judgment on the Note requires the Court to first determine if the Esparzas defaulted on their obligations under the Bail License Agreement.

Whether the Esparzas defaulted on their obligations under the Bail License Agreement is a disputed issue of fact. Consequently, summary judgment is inappropriate. Furthermore, there are clauses in both the Bail License Agreement and the Indemnity Agreement mandating arbitration of "[a]ny controversy or claim arising out of or relating to" these agreements. Thus, this Court does not appear to be the proper forum to resolve the parties' dispute under the Bail License

5

Agreement and the Indemnity Agreement.

The remaining issue before the Court is whether this matter should be stayed pending resolution of the Nebraska case.  The Court will defer ruling on this question pending a determination of whether this Court is the appropriate forum to resolve the parties' dispute under the Bail License Agreement and the Indemnity Agreement.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Amwest Surety Insurance Company's Motion for Partial Summary Judgment on its Counterclaim and Crossclaim, filed July 28, 2003, **[Doc. No. 54]** is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Amwest and Defendants Scott and Sharla Esparza submit briefs addressing why they should not arbitrate their disputes arising out of or relating to the Bail Licensing Agreement and the Indemnity Agreement.  These briefs are due fourteen days from the date of this Order.

Dated this 4th day of November, 2004.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE